1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11
12
13
14

| JON RYAN PRIMOZICH, | CASE NO. C16-82 BJR |
|---|---|
| Plaintiff, | ORDER PARTIALLY GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| EDWARD M OCZKEWICZ, et al., | |
| Defendants. | |

15

16    **I.    INTRODUCTION**

17    This matter is before the Court on Defendants' Joint Motion for Summary Judgment. (Dkt.

18    No. 12.)  The motion seeks dismissal of all claims filed by Plaintiff against these defendants –

19    claims for negligence under the Jones Act and unseaworthiness, maintenance, cure, and unearned

20    wages under general maritime law, punitive damages, and others.  (*See* Dkt. No. 1, Complaint at

21    pp. 3-6.)  Plaintiff opposes the motion and requests leave of the Court to amend his complaint.

22    (Dkt. No. 16, Response.)

23
24

1    Upon review of all briefing, the applicable case law and relevant parts of the record, the

2    Court PARTIALLY GRANTS AND PARTIALLY DENIES Defendants' request for dismissal of

3    all claims and GRANTS Plaintiff's request to amend his complaint to add VMS Fisheries, LLC,

4    as a defendant.  The Court's reasoning follows:

5    **II.    LEGAL STANDARD**

6    Summary judgment is appropriate if the evidence, when viewed in the light most favorable

7    to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and

8    the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see Celotex Corp. v.*

9    *Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The

10   court is "required to view the facts and draw reasonable inferences in the light most favorable to

11   the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

12   The moving party bears the initial burden of showing there is no genuine issue of material

13   fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the

14   moving party meets its burden, the burden shifts to the non-moving party to "make a showing

15   sufficient to establish a genuine dispute of material fact regarding the existence of the essential

16   elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.  **BACKGROUND**

17   Defendant Edward Oczkewicz ("Oczkewicz") is the owner of Maritime Fabrications, Inc.

18   and La Conner Maritime Service (collectively known as "La Conner Maritime"), companies which

19   manufacture and repair recreational and commercial fishing vessels.  (Dkt. No. 13, Decl. of

20   Krisher, Ex. 1, Depo. of Oczkewicz, 5:13-22, 9:5-9.) Oczkewicz also owns several commercial

21   fishing vessels, including a vessel called the JIMMY O, which operates out of Alaska (primarily

22   in the Bristol Bay fishing catchment) during the summer season.  (*Id.*, 7:9-11.)

23

24

1    Defendant Vincent Stone ("Stone") is the sole owner of VMS Fisheries, LLC ("VMS"), a

2    company through which he has owned and leased commercial fishing vessels and fishing permits.

3    Dkt. No. 13, Decl. of Krisher, Ex. 2, Depo. of Stone, 6:1-4, 7:1-4 8: 15-21.)          Plaintiff Jon

4    Primozich ("Primozich") is a long-time commercial fisherman who has also worked in other

5    maritime-related capacities, including work for La Conner Maritime performing tasks such as

6    outfitting vessels, concrete labor and painting. (Dkt. No. 17, Decl. of Primozich, ¶¶ 3-4.)

7    In mid-2015, both Stone and Primozich were interested in chartering the JIMMY O for the

8    Summer 2015 Bristol Bay season; Oczkewicz eventually decided to lease the boat to VMS on a

9    "bareboat" or "demise" basis, a contractual arrangement which transfers all incidents of ownership

10   to the chartering party, except for the title; thus, the employer of all the crewmembers of the

11   JIMMY O during the Summer 2015 season was VMS.  (Depo. of Oczkewicz, 13:17-25; Dkt. No.

12   14, Decl. of Stone, Exs. 1-2.)

13   Stone and Primozich reached an oral agreement to employ Plaintiff as a crewmember of

14   the JIMMY O.  (Decl. of Primozich at ¶ 5; Depo. of Stone 19:3-6.)  Prior to the vessel being

15   launched in La Conner in April 2015 (for a short trip to Seattle where it would be barged to Bristol

16   Bay), Plaintiff provided services towards preparing the boat, such as buying groceries, loading the

17   JIMMY O with nets, fishing gear (including Plaintiff's own foul weather fishing gear), and

18   assisting with the launch.  (Decl. of Primozich at ¶¶ 6-7.)  After providing those services,

19   Primozich relocated to Alaska to work for La Conner Maritime in Naknek; included among his

20   duties were painting, construction, and some work aboard the JIMMY O (the installation of a light

21   bar on the vessel's exterior and the installation of refrigeration tubes for the cooling system).  (Dkt.

22   No. 13, Decl. of Krisher, Ex. 3; Depo. of Primozich, 71:9-21 and 75:2-24.)

23

24

ORDER PARTIALLY GRANTING MOTION FOR SUMMARY JUDGMENT - 3

1  Plaintiff's work with La Conner Maritime concluded in late May 2015; he moved off the
2  premises of that company and into a shipping container and began work as an independent
3  contractor assembling and repairing nets for Adams Enterprises in Naknek.  Plaintiff kept his own
4  hours at that job and alleges that, when Stone relocated to Naknek in June 2015, he performed a
5  number of tasks for Stone, among which were loading several truckloads of gear (including
6  mooring lines, net lines and a pike pole) and more of his own gear (survival suits, galley items and
7  miscellaneous fishing gear) aboard the JIMMY O.  (Decl. of Primozich at ¶ 12.)

8  The JIMMY O was on blocks, out of the water, during this time as it was being prepared
9  for the upcoming season.  Stone denies that Primozich had anything to do with the onboard work
10  of readying the boat to go fishing (Depo. of Stone, 36:20-25) and Plaintiff's own deposition
11  testimony is that he would "stop by and look and see what was going on" on the vessel prior to its
12  launch. (Depo. of Primozich, 138:11-20.)

13  The JIMMY O was launched on June 24, 2015.  One or two days prior to the launch, Stone
14  requested Primozich to help him move a number of bags of nets from Stone's locker to another
15  net storage area.  Primozich acknowledged that it was a "two-man" job and that a third person was
16  not necessary (*Id.* at 141:21-142:4), but also alleges that the bags had no handles and were
17  "slippery" (Decl. of Primozich at ¶ 17), an allegation which Defendant does not controvert.  During
18  the loading of the bags onto Stone's truck, Stone lost his grip on one of the bags and his end
19  dropped to the ground.  Primozich testified that "it just kind of fell real quick on my arm.  And
20  before I had a chance to let go of it, it just pulled."  (*Id.* at 139:24-25; *see also id.* at 143:11-15.)
21  While he did tell Stone "I think I hurt my arm," he "didn't think it was a big deal" at the time.  (*Id.*
22  at 146:11-13.)  The two men loaded the remaining bags and Plaintiff neither took any medication
23
24

1    for the injury nor mentioned it to anyone else until he sought out a medical professional some time

2    later.  (*Id.* at 147:1-148:9.)

3          One or two days after that incident, Primozich stopped repairing nets and reported to the

4    JIMMY O.  He recalls spending one night on board the vessel before it launched.  (*Id.* at 115:5-

5    14.)  Following a short shakedown cruise, the JIMMY O went on a brief fishing trip.  Primozich's

6    employment as a crewmember on the vessel ended the day after that initial fishing trip.  (*Id.* at

7    109:23-110:21.)  He found other employment in Alaska (Decl. of Primozich at ¶ 12), eventually

8    returned to Seattle, and in January, 2016 filed this lawsuit against the Defendants, asserting claims

9    which include negligence under the Jones Act; unseaworthiness, maintenance, cure, and unearned

10   wages under general maritime law; failure to have a written "Fishing Agreement" with him; and

11   retaliatory discharge.  Plaintiff seeks both actual and punitive damages.  (*See* Dkt. No. 1, Complaint

12   at pp. 3-6.)

13        **III.    DISCUSSION**

14           A.   Certain claims dismissed preliminarily

15        In the course of his responsive briefing, Plaintiff dismisses or abandons several of his

16   claims against Defendants as legally unsupported.  They are:

17   1.   All claims for personal liability against Defendant Oczkewicz ("Defendant" hereinafter

18        refers only to Defendant Stone);

19   2.   His punitive damages claim for unseaworthiness; and

20   3.   All claims under 46 U.S.C. § 10601 (absence of a written agreement).

21   Prior to any further analysis of Defendant's motion, the Court GRANTS that request and

22   DISMISSES those claims.

23

24

ORDER PARTIALLY GRANTING MOTION FOR SUMMARY JUDGMENT - 5

B. <u>"Seaman" v. "expectant seaman"</u>

The Jones Act (46 U.S.C. § 30104) is applicable only to a "seaman injured in the course of employment."  The Act does not cover "probable or expectant seamen," only "seamen in being." *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 190-91 (1952).  This is equally true of general maritime law.

If Plaintiff cannot establish that he was a "seaman" at the time of his injury, all of his maritime claims fail.  "[A] Jones Act seaman, who possesses the full range of traditional seamen's rights and remedies, cannot maintain a… seaworthiness action against a vessel on which he is not a crew member." *Smith v. Harbor Towing & Fleeting, Inc.*, 1991 AMC 986, 990; 910 F.2d 312 (5th Cir. 1990).  "The right to maintenance and cure applies only to 'seamen' who are injured or fall ill while 'in service of the ship.'" *Whitman v. Miles*, 387 F.3d 68, 71-72 (1st Cir. 2004) (citation omitted).  "The initial prerequisite for recovery on any of plaintiff's claims [for maintenance and cure, unearned wages, and for 'unseaworthiness' under general maritime law] in this matter is that plaintiff was a 'seaman' at the time of his accident." *Lara v. Arctic King Ltd.*, 178 F. Supp. 2d 1178, 1179 (W.D. Wash. 2001).

> Under the Jones Act, status as a "seaman" depends on three factors: (1) the vessel on which the claimant was employed must be in navigation; (2) the claimant must have a more or less permanent connection with the vessel; and (3) the claimant must be aboard primarily to aid in navigation. *Bullis v. Twentieth Century-Fox Film Corp*., 1973 AMC 1292, 1293; 474 F.2d 392, 393 (9th Cir. 1973) (the "*Bullis* test").

*Gizoni v. Southwest Marine, Inc.,* 1991 AMC 711, 713; 909 F.2d 385 (9th Cir. 1990).

Defendant argues that Plaintiff cannot satisfy the requirement that the vessel in question was "in navigation" at the time of the injury, as the JIMMY O was out of the water and on blocks at that time.  He relies heavily on the ruling of the Supreme Court in *Desper*, where a plaintiff who had been hired for a fishing season was killed by an exploding fire extinguisher while painting life

1    preservers for use on his vessel.  The Supreme Court found that "while engaged in such seasonal

2    repair work, Desper was not a 'seaman' within the purview of the Jones Act."  342 U.S. at 191.

3         Despite the superficial similarities with the facts of this case, *Desper* is distinguishable and

4    ultimately inapplicable to this litigation.  As the *Desper* court made clear, "whether an individual

5    was a 'seaman'… depends largely on the facts of the particular case and the activity in which he

6    was engaged at the time of the injury." *Id.* at 190.  Among the facts upon which *Desper* relied was

7    the fact that the vessel in question was undergoing "seasonal repairs" and the work in which the

8    plaintiff was involved when killed "would customarily be done by exclusively shore-based

9    personnel." *Id.*

10        Neither is true here, or at least there is a dispute about whether those facts obtain.  There

11   appears to be no argument that the JIMMY O was being prepared for launch – as opposed to

12   undergoing "seasonal repairs" -- at the time of Plaintiff's injury (one or two days before the actual

13   launch).  And it is at least a disputed material fact whether the transfer of the nets which was the

14   occasion for the accident was (a) in service of the JIMMY O and (b) work customarily done by

15   the crew of a vessel (as opposed to done "exclusively [by] shore-based personnel").  Plaintiff states

16   that both were true – the nets were for "the in-season use of the JIMMY O" and the work of moving

17   those nets prior to launch "is the work that is done by members of the crew of the vessel involved"

18   (Decl. of Primozich at ¶¶ 19-21)[1]– and these factual circumstances alone are sufficient to

19   distinguish this case from the holding of *Desper*.

20        Additionally, later Supreme Court rulings call into question whether the fact that a vessel

21   is not actually in the water at the time of an injury disqualifies it from being "in navigation."  In

22

23   [1] The Court rejects Defendant's assertion that any portion of Plaintiff's declaration should be stricken or ignored as a "sham affidavit."  Defendant points to no specific portions of the declaration which contradict prior testimony by

24   Plaintiff.

ORDER PARTIALLY GRANTING MOTION FOR SUMMARY JUDGMENT - 7

fact, the Supreme Court has made it clear that "a vessel does not cease to be in navigation when she is not voyaging, but is at anchor, berthed, or at dockside." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 373 (1995)(citation omitted).

The *Chandris* court also cited with approval this passage from a maritime treatise:

> [A] vessel is in navigation… when it returns from a voyage and is taken to a drydock or shipyard to undergo repairs in preparation to making another trip, and likewise a vessel is in navigation, although moored to a dock, if it remains in readiness for another voyage.

2 M. Norris, Law of Seamen § 30.13, p. 364 (footnotes omitted)(cited at 515 U.S. at 374). It is undisputed that the JIMMY O was undergoing preparations to make another trip, as it had been brought up to Alaska to participate in the summer fishing season and was launched two days after the accident at issue.

Finally, there is abundant jurisprudence that the issue of whether a vessel is "in navigation" or whether a plaintiff qualifies for "seaman" status is best left to the factfinder.

> Yet the underlying inquiry whether a vessel is or is not "in navigation" for Jones Act purposes is a fact intensive question that is normally for the jury and not the court to decide… Removing the issue from the jury's consideration is only appropriate where the facts and the law will reasonably support only one conclusion.

*Chandris,* 515 U.S. at 373 (citations omitted). And, in general,

> [w]hether a plaintiff is a seaman is typically a question for the jury, where there is an evidentiary basis for such a finding (citations omitted). "There is an 'evidentiary basis' for determining a   plaintiff's status as a seaman, when, for example, parties dispute whether the ship was in navigation or whether the employee was actually a member of the ship's crew."

*Gizoni,* 1991 AMC at 713 (citations omitted). Both the status of the vessel and Plaintiff's status as an employee are disputed. Defendant argues that Plaintiff did not report for duty on the JIMMY O until after the accident, while Plaintiff presents evidence that he was operating under Stone's orders and preparing the vessel for launch by transporting netting to be used on the boat during the

season.  As mentioned *supra,* Plaintiff also asserts, based on his 25 years of experience as a crewmember or master of Bristol Bay boats, that the kind of work he was doing in the days before the JIMMY O's launch is work typically done by members of the crews of the boats involved. (Decl. of Primozich at ¶ 21.)  Summary judgment is not appropriate under these circumstances and the Court DENIES Defendant's request to rule as a matter of law that Plaintiff was not a seaman employed in the service of the JIMMY O at the time he was injured.

C.  Jones Act negligence

"The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'"  *Chandris*, 515 U.S. at 354 (quoting 46 U.S.C. App. § 688(a)).  The elements of a Jones Act negligence claim are "duty, breach, notice and causation." *Ribitzki v. Commar Reading & Bates, Ltd.,* 111 F.3d 658, 662 (9th Cir. 1997).

Defendant disputes that Plaintiff can establish any element of this cause of action.  First, he denies that Primozich was acting "in the course of his employment;" i.e., that his employment with the JIMMY O had begun.  Plaintiff cites the holding of the Supreme Court in *Braen v. Pfeifer Oil Transp. Co.*, 361 U.S. 129 (1959) in response:

> Petitioner was acting "in the course of his employment" at the time of the injury, for at that moment he was doing the work of his employer pursuant to his employer's orders.  No more is required by the Jones Act…

*Id.* at 133.   As the *Braen* court made clear, a seaman may suffer an injury in locations somewhere other than on board the vessel and still be within "the course of his employment" for Jones Act purposes. *Id.* at 132.   This order has addressed the issue of Plaintiff's employment status *supra*, and the result will be the same here: Defendant is not entitled to a ruling as a matter of law that Plaintiff was not employed as a seaman by the JIMMY O at the time he was injured.

1    Defendant further asserts that Plaintiff is unable to establish the elements of his negligence

2    claim, arguing that "a shipowner is not liable simply because it asked a seaman to perform heavy

3    lifting." *Rutherford v. Lake Michigan Contractors, Inc.*, 132 F.Supp.2d 592, 599 (W.D. Mich.

4    2000).  But Plaintiff was not simply asked to do heavy lifting; he was asked to assist Stone in

5    moving what were undisputedly heavy bags of gill nets, bags which Plaintiff alleges were slippery

6    and had no handles (Decl. of Primozich at ¶ 17), allegations that Defendant does not controvert

7    and that the Court assumes to be true for the purposes of this summary judgment motion.

8    Defendant maintains that "the fact that a fellow worker may spontaneously lose his grip on the end

9    of an object, ordinarily lifted safely by two men, does not implicate negligence." (Dkt. No. 12,

10   Motion at 17.)  The Court does not agree that this accurately states the circumstances of this case.

11   Negligence "is conduct which falls below the standard established by law for the protection

12   of others against unreasonable risk of harm." *Rutherford, supra* at 596 (citation omitted).  The

13   Court has no difficulty in declaring that a duty of care exists in a situation where two persons are

14   lifting a heavy, slippery, handle-less bag, and further declaring that Plaintiff's injury is within the

15   foreseeable range of injuries which could occur if that duty is breached.  The issue of whether

16   Stone exercised the requisite level of care is one for the finder of fact.  Defendant is not entitled to

17   summary judgment of dismissal of Plaintiff's Jones Act claim of negligence.

18

19          D.  Unseaworthiness

20          A vessel is seaworthy if 'reasonably suited for her intended service." *Mitchell v. Trawler*

21   *Racer,, Inc.*, 362 U.S. 539, 550 (1960).  An unseaworthiness claim is actionable if the seaman can

22   prove "that an unseaworthy condition of the ship or its appurtenances caused his injury." *Napier*

23   *v. F/V Deesie, Inc.,* 454 F.3d 61, 67-68 (1st Cir. 2006).

24

The Court agrees with Defendant: the single incident which resulted in Plaintiff's injury does not suffice to satisfy the legal definition of "unseaworthiness."  Unseaworthiness is a condition, not an individual occurrence.  The "isolated, personal… act" of another seaman is not "unseaworthiness… To hold that this individual act of negligence rendered the ship unseaworthy would be to subvert the fundamental distinction between unseaworthiness and negligence…" *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 500 (1971).

The cases which Plaintiff cites in support of his position are all distinguishable in that they concern either an unsafe method of work or an incompetent or untrained crewman.  Plaintiff presents no evidence that either of these conditions obtain here.  There is no evidence of an extensive history of loading these nets into Stone's truck (i.e., no "method") and no evidence that Stone was either untrained or habitually careless in handling heavy items.  The circumstances of Plaintiff's injury, based on the evidence Plaintiff has brought forward, do not meet the legal requirements of a claim of "unseaworthiness."

While there is dispute about whether the bags of nets which Plaintiff was helping to load were "appurtenances" of the JIMMY O (although they were not loaded directly onto the vessel, Plaintiff asserts that they were being moved to be stored at a convenient location to be used by the JIMMY O later in the season), the burden is on Plaintiff to come forward with evidence and argument which support his claims that the condition of the item satisfies the legal definition of "unseaworthy."  He has failed to do so.

Defendant's motion for summary judgment of dismissal of that claim will be granted.

1          E.   Maintenance and cure, unearned wages and punitive damages

2          Maintenance, cure and unearned wages are available to "'seamen' who fall ill or are injured

3     while 'in service of a ship.'"  *Whitman v. Miles*, 387 F.3d 68, 71-72 (1st Cir. 2004).  Based on the

4     Court's decision to deny summary judgment regarding whether Plaintiff was a "seaman" who was

5     injured by an act of negligence while "in the course of employment," these claims will also survive

6     to be decided by the trier of fact.

7          Punitive damages, however, are available only for "willful and wanton disregard of the

8     maintenance and cure obligation."  *Atlantic Sounding v. Townsend*, 557 U.S. 404, 424 (2009).  The

9     term "willful and wanton" describes a very particular course of conduct, characterized by an

10    intentional and egregious pattern of behavior; previous courts have used descriptions like

11    "callous… recalcitrant… and persistent" (*Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962)), or "bad

12    faith" (*Harper v. Zapata Off-Shore Co.,* 741 F.2d 87, 90 (5th Cir. 1984)).  Plaintiff presents no

13    evidence in support of this contention, merely stating in his responsive brief that "defendants have

14    failed to meet their strict obligation to properly investigate and pay unearned wages." (Response

15    at 18.)  Unsupported allegations will not suffice to overcome a summary judgment challenge.

16    Plaintiff is required at this stage to come forward with the evidence supporting his claim of willful

17    and wanton disregard, and has failed to do so.  Defendant's motion for summary judgment of

18    dismissal of all punitive damages claims will be granted.

19

20          F.   Retaliation

21          In his complaint, Plaintiff alleges that he was wrongfully discharged in retaliation for

22    reporting the presence of "large quantities of cannabis on board" the JIMMY O, in violation of the

23

24

1   Seamen's Protection Act (46 U.S.C. § 2114) "and/or the general maritime law and/or applicable

2   state law." (Complaint at ¶ 12.)

3        The Seamen's Protection Act prohibits an employer from terminating a seaman who has

4   "in good faith reported or is about to report to the Coast Guard or other appropriate Federal agency

5   or department that the seaman believes that a violation of a maritime safety law or regulation

6   prescribed under that law or regulation has occurred."  46 U.S.C. § 2114(a)(1)(A).  Plaintiff

7   presents no evidence that he reported (or was about to report) the presence of the cannabis on board

8   the JIMMY O to either the Coast Guard or any other federal agency, nor does he present proof of

9   any maritime safety law or regulation which was violated.  Plaintiff also states his retaliatory

10  discharge claim under "general maritime law and/or applicable state law."  Complaint, ¶ 12.  But

11  he cites neither case law nor state statute in support of his legal theory of retaliation; nor does he

12  cite any evidence which would tend to establish that his termination was otherwise wrongful.

13  Additionally, he makes no counterarguments in his briefing in response to Defendant's contentions

14  that this claim is meritless.

15       Defendant also analyzes whether Plaintiff has satisfactorily stated a claim under

16  § 2114(a)(1)(D) of the Act, which concerns termination following the notification or attempted

17  notification of the vessel owner of a work-related personal injury.  But Plaintiff has dismissed the

18  vessel owner from this suit (and presented no proof that he notified the owner in any event),

19  therefore there can be no question of adequately stating a retaliation claim under this section of

20  the Seamen's Protection Act.  Defendant's motion for dismissal with prejudice of Plaintiff's

21  retaliation claim will be granted.

22

23

24

G.  <u>Defendant's personal liability, Plaintiff's motion for leave to amend the complaint</u>

Plaintiff's suit named two individuals as defendants: Edward Oczkewicz (now dismissed) and Vincent Stone.  Defendant Stone argues that Plaintiff's employer was actually Stone's company, VMS Fisheries, LLC (of which he is sole owner; Motion at p. 2) and that he himself cannot be held liable as Plaintiff's employer.

Plaintiff responds to this arguments in two ways.  He first asserts that Stone should be held liable as the "agent for an undisclosed principal" on the grounds that at no time during his discussions with Plaintiff regarding employment on the JIMMY O did he mention that VMS would actually be Plaintiff's employer.  In support of this position he cites a 1952 S.D.N.Y. ruling which held that

> … one who employs a seaman for a vessel controlled by an undisclosed principal is liable to the seaman for injuries received in the course of his employment. The plaintiff's position is further aided by the American Law Institute's Restatement of Agency, § 322, which states the settled rule:
>
>  'An agent purporting to act upon his own account, but in fact making a contract on account of an undisclosed principal, is a party to the contract.'
>
> If then the agent was a party to the contract it must have been as employer.

*McKenzie v. Blidberg Rothchild Co.*, 12 F.R.D. 392, 393 (S.D.N.Y. 1952).  The case, while over 50 years old, has never been overturned.   Defendant cites Ninth Circuit precedent that there can be only one Jones Act employer (*Glynn v. Roy Al Boat Mngmt Corp.*, 57 F.3d 1495, 1500 (9th Cir. 1995), but the Court is not persuaded that such a holding negates the possibility that an <u>agent</u> of a Jones Act employer can likewise be held liable where the employer is undisclosed.

1    Plaintiff further requests that he be permitted pursuant to the Federal Rules of Civil

2    Procedure to amend his complaint to name VMS Fisheries, LLC, as a defendant in this matter.

3    Defendant opposes this request on procedural and substantive grounds.

4    Procedurally, Defendant argues that Plaintiff's request ignores the requirements of this

5    district's Local Rules that such a request be properly noted, and also be accompanied by a proposed

6    order and a proposed amended complaint that tracks the proposed changes (LCRs 7(b)(1) and 15).

7    Furthermore, Defendant attacks the request on the grounds that it does not conform to Fed.R.Civ.P.

8    16, but in truth the defect arises (if at all) from Fed.R.Civ.P. 15 which covers amended pleadings.

9    Substantively, Defendant maintains that Plaintiff's request is untimely.  The parties agree

10   that Plaintiff did not find out about the chartering arrangement with VMS until he deposed

11   Defendant in August, 2016.  Defendant asserts that Plaintiff's delay of another month and a half

12   before making his motion to amend in his responsive briefing constitutes a lack of diligence which

13   merits denial of the request.  The Court disagrees.  Fed.R.Civ.P. 5(a)(2) dictates that "[t]he court

14   should freely give leave when justice so requires," and the Court finds that it is in the interests of

15   justice to permit an amendment to add VMS Fisheries, LLC as a named defendant.  As Stone is

16   the sole owner/operator of the legal entity, the amendment creates no issue of surprise or delay

17   occasioned by additional discovery or legal theories.  Plaintiff will be ordered to file his amended

18   complaint within seven days of the filing of this order.

19   In addition to adding VMS as a defendant, Plaintiff has also suggested the addition of a

20   claim under 46 U.S.C. § 30103 (formerly 46 App. U.S.C. § 491), which permits a person to "bring

21   a civil action against a master… of a vessel, and recover damages, for personal injury or loss

22   caused by the master's… negligence or willful misconduct."  While the Court does not agree with

23   Defendant's argument that liability under this statute is restricted to only incidents occurring on

24

1     board a vessel, the Court does agree that this statute was not intended for use by seamen or

2     crewmembers, but rather for non-maritime personnel who are injured by the negligence of the

3     master or crew of a vessel.  Furthermore, this legal theory has been available to Plaintiff since the

4     outset of the case and he offers no good cause why such a claim was not plead in his original

5     complaint.  In this instance, Plaintiff's request to amend is truly untimely and will be denied.

6     **IV.    CONCLUSION**

7     The claims withdrawn by Plaintiff (punitive damages for unseaworthiness, damages under

8     46 U.S.C. § 10601, and all claims against Defendant Oczkewicz) will be DISMISSED per his

9     request.

10     Summary judgment in favor of Defendant will be GRANTED as to Plaintiff's claims for

11     unseaworthiness, retaliatory discharge and punitive damages.  The remainder of Defendant's

12     motion for summary judgment will be DENIED.

13     Plaintiff's motion for leave to amend his complaint will be GRANTED.  Plaintiff is ordered

14     to file his amended complaint within seven days of the entry of this order.

15

16     The clerk is ordered to provide copies of this order to all counsel.

17     Dated January 9, 2017.

18

19     _Barbara J. Rothstein_

20     Barbara Jacobs Rothstein
       U.S. District Court Judge

21

22

23

24